DAN FULTON, JOHN C. ALLEY and E. J. BYRNE, as Members of the STATE BOARD OF EQUALIZATION of the STATE OF MONTANA, Plaintiffs and Appellants, v. FARMERS UNION GRAIN TERMINAL ASSOCIATION, a Minnesota Corporation, FARMERS CO-OP SUPPLY, INC., of Lake County, a Montana Corporation, and ASSOCIATED FOOD STORES, INC., a Utah Corporation, Defendants and Respondents.

No. 10445.

Submitted June 14, 1962. Decided August 28, 1962.

374 P.2d 231.

524

A. W. Scribner (argued orally), John R. Kline (argued orally), Helena, for appellants.

A. L. Libra (argued orally), and Carl G. Smithwick, Hubert J. Massman (argued orally), and Laverne V. Harris, Helena, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal by plaintiffs from a judgment entered in the district court of Lewis and Clark County upon an order granting motions to dismiss without leave to amend.

The action was instituted seeking a declaratory judgment. In brief, the complaint alleged the enactment of Chapter 155 of the 1961 Session Laws; that the plaintiff State Board of Equalization, and its members, hereinafter referred to as the Board, issued amendments to its regulations to implement the amendments to the Corporation License Tax Law effected by the enactment of Chapter 155; that the defendants, Farmers Union Grain Terminal Ass'n, Farmers Co-op Supply Inc. of Lake County and Associated Food Stores, Inc., hereinafter referred to as defendants, in filing their tax returns, deducted from their

gross income patronage dividends or patronage refunds, such action not being permitted under the amended Board regulations; that the action was brought against the defendants as members of a class, being cooperative corporations, and such defendants adequately and fairly represent all members of the class; that the action was brought to secure a speedy determination of the issues in dispute and to avoid the necessity of separate actions to enforce the law and its regulations. The complaint prayed:

"WHEREFORE, plaintiffs pray judgment of this Court declaring and adjudging that the Amendments to Regulations of the State Board of Equalization of the State of Montana promulgated by said Board on the 2nd day of May, 1961, are valid and enforceable in all respects; that cooperative corporations doing business in the State of Montana and subject to Corporation License Tax may not exclude or deduct from gross income any amounts paid as dividends on capital stock, patronage dividends, or otherwise, whether paid in cash, merchandise or scrip, or however allocated, and for such other and further relief as to the Court may seem just and equitable in the premises."

Many exhibits were annexed to the complaint, including the amendments to the regulations which had been promulgated by the State Board of Equalization.

Chapter 155, Laws of 1961, amended section 84-1501, R.C.M. 1947, as amended by section 1, Chapter 232, Laws of 1957, and section 1, Chapter 264, Laws of 1959, so far as pertinent to this decision, by substituting for subparagraph Eleventh a subparagraph designated (i).

Subparagraph Eleventh of section 84-1501, R.C.M.1947, as amended by Laws of 1957 and 1959, had previously read:

"Eleventh. Labor, agricultural or horticultural cooperatives organized and operated on a cooperative basis; (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less

the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the state of incorporation or 6 per centum per annum, whichever is the greater on the value of the consideration for which the stock was issued, and if substantially all such stock (other than non-voting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by state law or a reasonable reserve for any necessary purpose. Such an association may market the products of non-members in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases. Business done with the United States, state of Montana or its political subdivisions shall be exempt under this act. Any cooperative association or corporation engaged in the business of operating a rural electrification system or systems for the transmission or distribution of electrical energy on a cooperative basis.''

Subparagraph (i) of section 84-1501, as amended by Laws of 1961, reads:

"(i) Any cooperative association or corporation engaged in the business of operating a rural electrification system or systems for the transmission or distribution of electrical energy on a cooperative basis;"

Section 84-1501 before amendment in 1961, provided for payment of a corporation license tax to this state and the subparagraphs covered organizations which were exempted from such tax. The effect of the amendment by Chapter 155, Session Laws of 1961, was to remove the exemption previously granted to labor, agricultural or horticultural cooperatives.

At the same 1961 Session, the Legislature enacted Chapter 235, Laws of 1961, which amended section 84-1504, R.C.M. 1947, which statute provides the method of computing corporation license tax. Before its amendment, and so far as pertinent here, section 84-1504, subd. (2), carried this wording:

"The term 'net income' means the gross income of the corporation less the allowable deductions. The term 'fiscal year' means an accounting period of twelve (12) months ending on the last day of any month other than December."

As amended by Chapter 235, Laws of 1961, section 84-1504, subd. (2) so far as pertinent, now reads:

*"The term gross income means the income from all sources within the state of Montana recognized in the determination of the corporation's federal income tax liability; but shall include interest exempt from federal income tax.* The term 'net income' means the gross income of the corporation less the allowable deductions. *However, the definitions of gross income and net income set forth in this section shall not be construed as allowing the deductions set forth in Section 243 of the Federal Internal Revenue Code as now written, or as that section shall be labeled or amended.* The term 'fiscal year' means an accounting period of twelve (12) months ending on the last day of any month other than December."

The regulations and amendments to 702 (b), 702(e) and

705 which the Board prays the court to hold valid are as follows:

Originally Section 702 of the regulations read:

"702. Gross Income. Gross income means all income derived from sources within Montana, including (but not limited to) the following items: * * *

"(b) Gross income from trade or business."

Such subsection was amended to read:

"(b) Gross income from trade or business.

"*In arriving at gross income of a cooperative, no reduction shall be made for any amounts paid as dividends on capital stock, nor any amounts allocated as patronage dividends or otherwise, during the taxable year to patrons of such a cooperative organization, whether paid in cash, merchandise, capital stock, revolving fund certificates, retained certificates, certificates of indebtedness, letters of advice or in some other manner that discloses to each patron the dollar amount allocated to him.*"

Before amendment Regulation 702(e) read:

"(e) Gains from the sale by a corporation of its assets, whether or not in connection with its liquidation. However, no gain or loss is recognized to a corporation from the distribution of its assets in kind in partial or complete liquidation."

After amendment such subsection read:

"(e) Gains from the sale by a corporation of its assets, whether or not in connection with its liquidation. *Provided, however, gains or losses resulting from corporate reorganizations, and gains or losses incurred during the course of liquidation of the corporation, where such gains or losses occur within twelve calendar months from the date of adoption of the plan of liquidation and the liquidation is completed within such twelve month period, will not be regarded as items of gross income.* No gain or loss is recognized to a corporation from the distribution of its assets in kind in partial or complete liquidation."

Regulation 705, before amendment, in part, read:

*"Items Not Deductible.* In computing net income, deductions may be claimed only for items specifically recognized by the law as deductible. The following are examples of the more common items not allowed as deductions: * * *"

Then followed various lettered paragraphs. This regulation was then amended by adding a new paragraph lettered (j) which reads:

"No deduction shall be allowed for any amounts paid as dividends on capital stock, nor any amounts allocated as patronage dividends or otherwise, during the taxable year to patrons of a cooperative organization, whether paid in cash, merchandise, capital stock, revolving fund certificates, retained certificates, certificates of indebtedness, letters of advice or in some other manner that discloses to each patron the dollar amount allocated to him."

Defendants filed motions to dismiss, and following a hearing thereon the district court granted such motions without leave to amend the complaint.

The order entered by the district court granting the motions read:

"The above entitled action was brought for the purpose of securing an adjudication of the question of whether patronage dividends paid by cooperatives are deductible as an item of gross income in tax returns to the State of Montana. The question hinges upon an interpretation of the amendments contained in Chapters 155 and 235 of the 1961 Session Laws. Prior to these enactments, section 85-1501, R.C.M.1947, contained subparagraph 11 which specifically exempt cooperatives from the requirement of filing a return based upon their gross income. Chapter 155 mentioned herein does not contain such an exemption so that the implication would necessarily follow that it was the intention of the Legislature that cooperatives would be subject to such taxation. However, section 85-1504, R.C.M.1947, which provides for the computation of the tax

was amended by the same Legislative Assembly in Chapter 235 to read as follows:

" 'The term gross income means the income from all sources within the State of Montana recognized in the determination of the corporation's Federal income tax liability.' " This immediately poses the question as to what the Federal income tax liability is with reference to patronage dividends. Neither plaintiffs nor defendants argue before this Court that the Federal Government does not exclude such items from gross income and, in fact, this is admitted. Under the circumstances present here it appears that while the Legislature on one hand took something away, it immediately gave it back with the other.

"Taxing statutes are construed strictly as to the liability and courts are not concerned with the wisdom or desirability of the taxing or non-taxing of any facet of our body politic or economic structures. It appears to this Court that if it were the wish of the Legislature to tax patronage dividends of cooperatives it would have been a relatively simple matter to have said so in just so many words.

"Counsel for the plaintiffs devotes some pages of his brief on the subject of the need for taxing cooperatives and cites an article in the Michigan Law Review on the subject. With equal force might be cited an article by John C. Satterfield, President of the American Bar Association who, in the March 1962 issue of Rural Electrification sets forth, at length, reasons why cooperatives should not be taxed. Whether they should be taxed or should not be taxed seems to this Court to be a matter solely for the Legislature to determine and in language which clearly evidences its intent to do so.

"Under the circumstances here present the Motions to Dismiss of the respective defendants are granted, without leave on the part of the plaintiffs to amend. Let judgment be entered accordingly."

Judgment was duly entered and this appeal was taken.

The Board by specifications of error contend that the court

erred in granting the motions to dismiss, in dismissing the complaint, rendering judgment for the defendants, and in holding that cooperative corporations may deduct or exclude from gross income all accounts paid as patronage dividends whether paid in cash or scrip, and however allocated.

In actual fact, the sole question involved is whether or not the amendments to the regulations adopted by the Board can be sustained as within their power and authority by virtue of the amendatory acts hereinbefore quoted.

We shall deal with the arguments of the Board in support of its position in the order they are raised.

We concede that since the action was taken upon motions to dismiss under Rule 12(b) of the Montana Rules of Civil Procedure, the allegations of the complaint must be viewed in a light most favorable to plaintiffs, admitting and accepting as true all facts well-pleaded.

We likewise agree that in construing a statute the paramount rule is to give effect to the intention of its makers or, as declared by this court: ''The intention of the Legislature in enacting a statute is the consideration which must control in its construction.'' McNair v. School Dist. No. 1, 87 Mont. 423, 288 P. 188, 69 A.L.R. 866; Campbell v. City of Helena, 92 Mont. 366, 16 P.2d 1, and other authorities cited therein.

We must likewise keep in mind: *"The intention is to be sought in the language employed* and the apparent purpose to be subserved. Johnson v. Butte & Superior Copper Co., 41 Mont. 158, 108 P. 1057, 48 L.R.A.(N.S.) 938.'' State ex rel. Carter v. Kall, 53 Mont. 162, 162 P. 385, 5 A.L.R. 1309. (Emphasis supplied.)

It is contended by the Board that the district court applied a general statute, being section 84-1504, to a specific subject (cooperatives) and thereby nullified the intent, object and purpose of an amendment on the specific subject, being section 84-1501. We find it difficult to concur in this contention.

Section 84-1501 provides for the tax; section 84-1504 provides the method of computing the same tax.

Historically, at the Fifth Session of the Legislature, an Act was passed and approved on March 6, 1897, levying a license tax upon telephone, telegraph, electric light, gas and water companies. This Act appears as section 2773, the Rev. Codes 1907. At the Twelfth Session in 1911, this Act was amended by Chapter 61, Laws of 1911. At the Fifteenth Session, Chapter 79, Laws of 1917, provided for a corporation license tax upon all corporations except those specifically listed as exempt, and repealed section 2773, Rev. Codes 1907, as amended. Section 1 of Chapter 79, Laws of 1917, except for subsequent amendments, is section 84-1501; section 2 of Chapter 79, except for subsequent amendments, is section 84-1502; section 4 of Chapter 79, except for subsequent amendments, is section 84-1504. Thus, it is at once apparent that one section could not be labeled a general law and the other a special law since they were both enacted as subdivisions of the same law.

The Board asserts that respondents rely upon the amendment to subdivision (2) of section 84-1504, heretofore quoted, and by reason thereof take the position that the Board must incorporate all of the exemptions granted to cooperatives under the Internal Revenue Code and the regulations of the Internal Revenue Bureau.

The Board contends that such view is not correct in that while the Federal Law grants specific exemptions to some types of cooperatives, under section 84-1501, as amended, the exemption to cooperatives has been deleted and therefore in determining gross income under section 84-1504 that part of the Internal Revenue Code dealing with exemptions to cooperatives must be disregarded, thus leaving nothing in the I.R.C. that would authorize deduction of patronage dividends.

Examining now the amendment to subdivision (2) of section 84-1504, effected by Chapter 235, Laws of 1961. It provides that

"gross income means income from all sources within the state of Montana recognized in the determination of the corporation's *federal income tax liability.*" Emphasis supplied.

In order to ascertain what a corporation's federal income tax liability is we must consult the I.R.C., being title 26 U.S.C.A. A tax is imposed upon corporations under section 11 thereof. Section 61 defines gross income as:

"(a) *General definition.—Except as otherwise provided in this subtitle,* gross income means all income from whatever source derived, including (but not limited to) the following items: * * *." Then follows a list of such items. The subtitle referred to is "Income Taxes", and without making a complete list we find many sections providing that gross income does not include certain income or that certain income shall be exempt from taxation. As examples we refer to sections 103, 108, 110, 111, 118, 521 and 522 of the I.R.C. The last two sections refer specifically to the exemption of farmers' cooperatives from tax, section 521 provides that farmers' cooperative organizations, as therein defined, "shall be exempt from taxation * * * except as otherwise provided in section 522."

Section 522 provides:

"(a) *Imposition of tax.—*An organization exempt from taxation under section 521 shall be subject to the taxes imposed by section 11 or section 1201.

"(b) *Computation of taxable income.—*

"(1) *General rule.—*In computing the taxable income of such an organization there shall be allowed as deductions from gross income (in addition to other deductions allowable under this chapter)—

"(A) amounts paid as dividends during the taxable year on its capital stock, and

"(B) amounts allocated during the taxable year to patrons with respect to its income not derived from patronage (whether or not such income was derived during such taxable year) whether paid in cash, merchandise, capital stock, revolving fund

certificates, retain certificates, certificates of indebtedness, letters of advice, or in some other manner that discloses to each patron the dollar amount allocated to him. Allocations made after the close of the taxable year and on or before the 15th day of the 9th month following the close of such year shall be considered as made on the last day of such taxable year to the extent the allocations are attributable to income derived before the close of such year.

"(2) *Patronage dividends, etc.*—Patronage dividends, refunds, and rebates to patrons with respect to their patronage in the same or preceding years (whether paid in cash, merchandise, capital stock, revolving fund certificates, retain certificates, certificates of indebtedness, letters of advice, or in some other manner that discloses to each patron the dollar amount of such dividend, refund, or rebate) shall be taken into account in computing taxable income in the same manner as in the case of a cooperative organization not exempt under section 521. Such dividends, refunds, and rebates made after the close of the taxable year and on or before the 15th day of the 9th month following the close of such year shall be considered as made on the last day of such taxable year to the extent the dividends, refunds, or rebates, are attributable to patronage occurring before the close of such year. Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 177.''

It would appear quite clear that in the determination of a cooperative corporation's federal income tax liability, that patronage dividends as above-described are excluded from gross income.

We would like at this point to call attention to the exception carried in the amendment to section 84-1504 in these words: "However, the definitions of gross income and net income set forth in this section shall not be construed as allowing the deductions set forth in Section 243 of the Federal Internal Revenue Code as now written, or as that section shall be labeled or amended.''

Section 243 af the I.R.C., in part, reads:

"(a) *General rule.*—In the case of a corporation (other than a small business investment company operating under the Small Business Investment Act of 1958), there shall be allowed as a deduction an amount equal to 85 percent of the amount received as dividends (other than dividends described in paragraph (1) of section 244, relating to dividends on the preferred stock of a public utility) from a domestic corporation which is subject to taxation under this chapter.

"(b) *Small business investment companies.*—In the case of a small business investment company operating under the Small Business Investment Act of 1958, there shall be allowed as a deduction an amount equal to 100 percent of the amount received as dividends (other than dividends described in paragraph (1) of section 244, relating to dividends on preferred stock of a public utility) from a domestic corporation which is subject to taxation under this chapter.

"(c) *Special rules for certain distributions.*—For purposes of subsections (a) and (b)—

"(1) Any amount allowed as a deduction under section 591 (relating to deduction for dividends paid by mutual savings banks, etc.) shall not be treated as a dividend.

"(2) A dividend received from a regulated investment company shall be subject to the limitations prescribed in section 854.

"(3) Any dividend received from a real estate investment trust which, for the taxable year of the trust in which the dividend is paid, qualifies under part II of subchapter M (sec. 856 and following) shall not be treated as a dividend.

"(d) *Certain dividends from foreign corporations.*—For purposes of subsections (a) and (b) of this section and for purposes of section 245, any dividend from a foreign corporation from earnings and profits accumulated by a domestic corporation during a period with respect to which such domestic corporation was subject to taxation under this chapter (or

corresponding provisions of prior law) shall be treated as a dividend from a domestic corporation which is subject to taxation under this chapter.''

Thus did the Legislature by this exception refuse to permit a corporation to deduct an amount equal to 85 percent and in the case of a small business investment company 100 percent of the amount received as dividends as permitted in determining a corporation's federal income tax liability.

The Board argues that to accept the interpretation of section 84-1504, contended for by the cooperatives, would include not only acceptance of the I.R.C. but also the Internal Revenue Bureau's Regulations. We might ask how is federal income tax liability determined except under the I.R.C. and the Regulations of the Bureau?

The foregoing discussion of the I.R.C. and Internal Revenue Bureau's Regulations is not meant to be anything more than a demonstration of what the legislative language used in the amendments enacted by the 1961 Legislative Session actually adopted. This discussion points up the danger inherent in such legislative language whereby Federal laws and Bureau regulations are attempted to be incorporated in state laws.

It was this situation that confronted the district court on the motions to dismiss, and prompted the order hereinbefore quoted. The Legislature very specifically removed section 243 of the I.R.C. from the definition of gross income or net income, but it did not see fit to remove the provisions of section 522 of the I.R.C. Both sections refer to deductions in determining federal income tax liability.

Where the language is clear and unambiguous we cannot be guided by what is asserted to have been intended. To do so we would substitute our judgment for the action taken by the Legislature in enacting the amendments here involved.

The judgment based upon the order sustaining the motions to dismiss was justified and must be sustained.

It is so ordered.

MR. JUSTICES ADAIR, DOYLE, CASTLES, and JOHN C. HARRISON, concur.