No. 13761

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

———————————

THEODORE SORENSON,

Plaintiff and Respondent,

-vs-

THE BOARD OF COUNTY COMMISSIONERS
OF TETON COUNTY et al.,

Defendants and Appellants.

———————————

Appeal from: District Court of the Ninth Judicial District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellants:

Charles M. Joslyn argued, County Attorney, Choteau,
Montana

For Respondent:

Hartelius and Lewin, Great Falls, Montana
Channing J. Hartelius argued, Great Falls, Montana

———————————

Submitted: January 26, 1978

Decided: APR 12 1978

Filed: APR 12 1978

Thomas J. Kearney

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants Roy Goodell, Martin Shannon and Bud C. Olson, the members of the Board of County Commissioners of Teton County (hereinafter the Board) appeal from a grant of summary judgment reversing their order denying withdrawal of certain lands from Teton County's hospital district.

Plaintiff Theodore Sorenson and other residents of Teton County petitioned the Board to withdraw an area constituting the northeast portion of Teton County from the county-wide hospital district, as provided in section 16-4311, R.C.M. 1947. A hearing on this petition was duly noticed and held in Choteau, Montana, on December 29, 1975. Several county residents appeared and were heard at the hearing, after which the petition was denied by the Board.

Plaintiff then brought the present action in the District Court, Teton County, seeking reversal of the Board's decision. Following a hearing on plaintiff's motion for summary judgment, and having considered briefs supporting and opposing that motion as well as the transcript of the hearing before the Board, the District Court granted summary judgment. The District Court's order set aside the Board's denial of the petition and granted withdrawal of the petitioning area from the county's hospital district.

The sole issue on appeal is whether summary judgment was properly granted.

Summary judgment is governed by Rule 56(c), M.R.Civ.P., which provides in part:

> " * * * The judgment sought shall be rendered
> forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, to-
> gether with the affidavits, if any, show that
> there is no genuine issue as to any material
> fact and that the moving party is entitled to
> judgment as a matter of law. * * *"

The parties agree there is no issue of material fact in the present case. Inquiry, therefore, is directed to whether plaintiff was properly granted summary judgment as a matter of law.

Chapter 43 of Title 16, Revised Codes of Montana, 1947, first enacted in 1953, authorizes the establishment of public hospital districts. Section 16-4311, R.C.M. 1947, as amended, allows for the withdrawal of a portion of such a district. In pertinent part it provides:

> "Any portion of a public hospital district may be withdrawn therefrom as in this section provided, upon receipt of a petition signed by fifty-one per centum (51%) of the taxpayers, or more, residing in and owning property within the area desired to be withdrawn from any public hospital district, on the grounds that such area will not be benefited by remaining in said district. The board of county commissioners shall, upon the filing of such a petition, fix a time for the hearing of such withdrawal petition * * * The board shall consider the petition and all objections thereto, and pass upon the merits thereof, and make its order in accordance therewith. * * * Such order is subject to review by the district court of the county, and appeal may be taken from the final judgment of such district court to the supreme court of Montana. * * *"

Plaintiff and others who own property in the northeast portion of Teton County secured the signatures of approximately 70 percent of the eligible area property owners on the petition for withdrawal of the area from the county hospital district.

At the hearing before the Board, proponents of withdrawal presented testimony that they live closer to hospitals in other cities than to the county hospital located in Choteau. Residents of the area seeking withdrawal, therefore, use other hospitals, in many instances those in Great Falls, rather than traveling the greater distance to Choteau. One proponent of withdrawal, for example, testified he lived in Power, which is 25 miles from Great Falls and 37 miles from Choteau. Proponents also referred to a study of area hospital facilities which indicated there was a current hospital bed surplus of 70 percent and a projected surplus of 66 percent in the rural areas in and around Teton County.

Opposition to withdrawal centered on the opponents' concern that if the petitioning area withdrew from the county hospital district, the mill levy to support the hospital would be borne by too few county residents. The opponents also stated that since the county hospital bond issue had passed, those seeking withdrawal from the hospital district should not be allowed to avoid supporting the hospital through its mill levy.

On the day after the hearing, the Board disposed of the petition in the following manner:

> "Motion by Martin Shannon that after considering the facts and question of benefits available to the proposed area, the Petition be denied. Seconded by Bud C. Olson. Motion carried."

On appeal the Board argues its denial of the petition was proper, contending there was insufficient evidence before it to grant withdrawal. The Board did not specify any reasons or offer any explanation in its denial of the petition. It is not clear whether the Board concluded benefit to the petitioning area had been established, or whether the proponents of withdrawal had failed to show a lack of benefit to themselves in remaining in the hospital district.

The only testimony as to benefit was presented by residents of the area seeking withdrawal from the hospital district. Their testimony, that they use other hospital facilities rather than those available in Choteau and that hospital bed occupancy rates in the area are relatively low, was uncontradicted. While lack of accessibility and need do not conclusively establish that an area is not benefited by remaining in a hospital district, in the absence of countervailing testimony tending to show an area is benefited by continued  inclusion in a hospital district, these factors must be considered.

By the terms of section 16-4311 the Board is empowered to determine whether a petitioning area will be granted withdrawal

from a hospital district. When a board of county commissioners exercises power within the limits of the statute granting it and with sound discretion, such exercise is not subject to review by the courts. Read v. Stephens, (1948), 121 Mont. 508, 512, 513, 193 P.2d 626.

The legislature, by enacting section 16-4311, specifically provided for an area's withdrawal from a hospital district on the grounds that area "will not be benefited by remaining in [the] district". Evidence as to benefit, therefore, may not be ignored by a board of county commissioners determining such withdrawal. As this Court stated in Grant v. Michaels, (1933), 94 Mont. 452, 462, 23 P.2d 266:

> " * * * the members of the board of county commissioners, conducting a 'hearing' in their quasi-judicial capacity, are the triers of the facts, and, consequently, cannot arbitrarily and capriciously disregard competent, credible and undisputed evidence and decide the matter before them 'as they see fit,' without evidence supporting their decision. A determination reached and rendered in arbitrary and capricious disregard of unimpeached testimony is 'against law.' (Harwood v. Scott, 65 Mont. 521, 211 P. 316)"

Here, uncontradicted testimony before the Board showed the petitioning area would not be benefited by remaining in the county's hospital district. The District Court properly ruled the Board had abused its discretion in denying the withdrawal petition, and the judgment of the District Court is therefore affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justice

-5-

Mr. Justice John Conway Harrison dissenting:

I dissent.

I find the reasoning of the California court in Underwood Land and Development Co. v. Bradshaw, 1957, 152 Cal.App.2d 655, 313 P.2d 216,219, persuasive. In considering the benefit to the area withdrawing, the principal issue in the instant case, the California court in Underwood Land and Development Co., a mandamus action, held:

> "At the final hearing petitioners in mandate sought the exclusion of their lands from the proposed district upon the ground that they would not be benefited by the district. The respondent board received evidence upon the issue thus presented, found that petitioners' lands would be benefited, and refused exclusion. Upon this issue the question before the trial court was whether or not, in refusing to exclude petitioners' lands, the board was guilty of an abuse of discretion. 'Abuse of discretion is established if * * * the order * * * is not supported by the findings, or the findings are not supported by the evidence.' Code Civ.Proc. sec. 1094.5(b). Our examination of the record convinces us that there was substantial evidence supporting the findings and that the findings support the challenged orders. Abuse of discretion was therefore not established. The following appears from the transcript: Generally speaking, the area sought to be excluded constitutes lands presently used mainly as hunting preserves and for livestock grazing. There are presently few inhabitants and the areas are largely inaccessible by road. Some of them at least are nearer existing private hospitals than they will be to the proposed hospital if it is located in the more densely populated portions of the district. However, these areas are on the edge of change, speaking in terms of population. Irrigation is contemplated and approaching. Roads are already planned and it is reasonable to suppose that the present paucity of population will rapidly disappear, since essentially the areas are productive and if made susceptible to irrigation and reachable by roads will be developed into productive farm lands, with a consequent influx of inhabitants. It was also shown that during the hunting seasons there were great numbers of persons engaged in that sport and subject to its hazards. As required by the controlling statutes, the State Department of Public Health certified to the board that there was a need for hospital beds and hospital service in the area of the proposed district, and that the need was not fulfilled by existing hospital services and would not be by pending hospital construction." 313 P.2d 219.

I would hold that the standard of review of this Court is limited, as in Underwood Land and Development Co., upon the whole record and that the findings of the Board are supported by substantial evidence.

I find no abuse of discretion by the Board and would uphold its findings.

Justice.

- 7 -